**Douglas ROSS d/b/a Doug's Shell, Inc.**

**v.**

**SHELL OIL COMPANY.**

**Civ. No. H–82–1088 (AHN).**

United States District Court,
D. Connecticut.

Oct. 20, 1987.

Dennis McCormack, Windsor, Conn., for plaintiff.

Paul D. Sanson, Shipman & Goodwin, Hartford, Conn., for defendant.

## MEMORANDUM OF RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

Plaintiff gasoline service station operator initiated this multi-count action in 1982, alleging that defendant gasoline distributor violated state and federal petroleum franchising statutes when it declined to renew its dealer agreement and lease with the plaintiff. He also asserted various related common-law claims. The plaintiff ultimately withdrew all counts but one, and the only claim now remaining is his alleged entitlement to "good will" compensation under Conn. Gen. Stat. Section 42–133*l* (b). The defendant has moved for summary judgment as to that claim, pursuant to Rule 56, Fed. R. Civ. P., on the ground that the parties' relationship was not a "franchise" within the meaning of Section 42–133*l* (b). At oral argument on September 30, 1987, the court granted the motion in a ruling from the bench. This memorandum will memorialize and augment that ruling.

### Background

The plaintiff, Douglas Ross ("Ross"), leased and operated a Shell service station in Southington, Connecticut, pursuant to a Motor Fuel Station Lease ("Lease") and Dealer Agreement ("Agreement") which he had entered into with the defendant, Shell Oil Company ("Shell"), and which granted him the right to occupy the station premises and to market the Shell trade name and trademarked products. Following a dispute over proposed amendments to the Lease and Agreement, Shell declined to renew them when they expired on October 31, 1982. Ross then filed a multi-count suit in this court, alleging that Shell's non-renewal of the contracts violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. Sections 2801 *et seq.*, and Connecticut gasoline franchising statutes, Conn. Gen. Stat. Sections 42–133*k* and 42–133*l*, and seeking monetary and injunctive relief. He also sought damages relating to reimbursement for credit card receipts. In count four, the subject of this motion, Ross claimed that he was entitled to monetary payment for goodwill lost as a consequence of the non-renewal, pursuant to Conn. Gen. Stat. Section 42–133*l* (b).[1] The court denied a temporary injunction which would have permitted Ross to remain in the station pending a resolution of the merits. *Ross v. Shell Oil Co.*, H–82–1088 (D.Conn. Apr. 9, 1983)(Clarie, J.), *aff'd mem.*, 742 F.2d 1432 (2d Cir.1983). On August 14, 1987, Ross withdrew all claims except count four. Now pending is the defendant's motion for summary judgment as to count four, in which Shell asserts that the plaintiff is not entitled to goodwill compensation because he was not a "franchisee" under Section 42–133*l* (b). Defendant Shell Oil Company's Motion for Summary Judgment, filed July 15, 1987 (filing no. 86). The plaintiff objects. As the parties agree on all principal pertinent issues of fact, the sole matter

---

1. Conn.Gen.Stat. Section 42–133*l* (b) provides in relevant part: "Upon termination of any franchise for whatever cause or reason,.... The franchisor shall fairly compensate the franchisee ... for the fair market value, ... of the franchisee's ... good will, if any...."

before the court is the legal question of whether the relationship between Ross and Shell is a franchise within the meaning of Section 42–133*l* (b).

## Discussion

■ Summary judgment is viewed in this circuit as an effective and correct method of avoiding protracted trials where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). *See* Rule 56(c), Fed. R. Civ. P. The Supreme Court has also looked with favor on the device, stating that summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)(quoting Rule 1, Fed. R. Civ. P.). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The summary judgment motion now before this court is an eminently suitable vehicle for examining and determining the ultimate viability of the plaintiff's case.

Conn. Gen. Stat. Section 42–133*l* (b) limits goodwill compensation to parties to a "franchise," a term defined in Section 42–133*k* (b), which requires that a franchise arrangement exist by virtue of "a marketing plan or system prescribed in substantial part by a franchisor."[2] In opposing Shell's Motion for Summary Judgment, Ross has made no showing either at oral argument or in his memorandum and affidavit that he could possibly present any evidence at trial indicating that Shell had prescribed such a "marketing plan or system."

*Narumanchi v. Shell Oil Co.,* No. N–83–554 (D.Conn. Nov. 24, 1986) (Mansfield, J., by designation) is directly apposite. The Dealer Agreement and Lease at issue in *Narumanchi* were identical to those involved in the present case. The court held that the relationship between the plaintiff station operator and the defendant lessor did not constitute a "franchise" under Section 42–133*k* (b), and that consequently the plaintiff was not entitled to goodwill payments following the defendant's non-renewal of the lease. *Narumanchi,* slip op. at 7.

The plaintiff has not attempted to distinguish *Narumanchi.* That court's reasoning and conclusions in applying the definitional requirements of Section 42–133*k* (b) to this very similar factual situation are highly persuasive. Moreover, *Narumanchi* is consistent with the statutory interpretation in *Consumers Petroleum v. Duhan,* 38 Conn.Sup. 495, 452 A.2d 123 (1982). In *Duhan,* the court found that the relationship between the station lessee and his lessor did not constitute a franchise under Section 42–133*k.* Although the lease in *Duhan* contained provisions which, among other things, required certain hours of operation, based rent upon the number of gallons of gasoline sold, and required the lessor's approval of advertising signs placed on the premises, the court found that those factors alone were insufficient to constitute a "marketing plan or system." 38 Conn.Supp. at 498, 425 A.2d at 125. The court looked for guidance to cases where other factors, in addition to those mentioned above, were determinative of whether a franchise relationship existed. *See Arnott v. American Oil Co.,* 609 F.2d 873 (8th Cir.1978), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980) (lessor retained right to audit lessee's books, inspect station to determine compliance with agreement). The *Duhan* court also listed other factors relevant to determining whether a relationship constitutes a franchise, including whether the lessor hires the employees, whether sales quotas are established, and whether a lessor provides

2. Conn.Gen.Stat. Section 42–133*k* (b) defines franchise as "an oral or written agreement in which (1) a franchisee is granted the right to engage in the business of offering, selling, or distributing motor vehicle fuel and oils and other related products ... under *a marketing plan or system* prescribed in substantial fact by a franchisor ..." (emphasis added).

management training and financial assistances. *Duhan*, 38 Conn.Supp. at 498–99, 425 A.2d at 125.[3]

Ross has failed to adduce any facts relevant to the above factors which could plausibly indicate the existence of a franchise relationship. Article 3.1 of the Agreement gave Ross the right, but not the obligation, to retail Shell products.[4] Ross was not required to purchase a minimum number of gallons of gasoline from Shell. No sales quotas were established. Perhaps most significantly, Ross had complete freedom under the Agreement to set the retail price for gasoline and other Shell products sold at the station. Furthermore, the arrangement between Ross and Shell, as evidenced by the course of their dealing, comported with Article 19 of the Agreement, which characterized Ross as an "independent businessman" and stated that Shell had no right "to exercise any control over, or to direct in any respect the conduct or management of, Dealer's business or operations...." While the Agreement mandated that Ross's service station employees wear prescribed uniforms and that the premises be adequately illuminated, these requirements are insufficient to support a finding that Shell had imposed a "marketing plan or system" upon the plaintiff's operation. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims" such as the one grounding this lawsuit. *Celotex*, 477 U.S. at ——, 106

S.Ct. at 2553. The defendant here is clearly entitled to summary judgment.

■ It is worth noting that the plaintiff's failure to comply with Local Rule 9(c) is a substantial factor in finding that the defendant is entitled to summary judgment. Rule 9(c) requires a party opposing a summary judgment motion to file a statement of material facts as to which genuine dispute exists.[5] When such a statement is not provided, the material facts set forth in the moving party's statement of facts not in dispute will be deemed to be admitted. The mere filing of an opposing memorandum and annexed affidavit which, when read as a whole, contain a "statement" of facts alleged to be in dispute, does not fulfill the requirement of a separate, discrete statement of such facts. As this court made clear in *Knowles v. Postmaster General, United States Postal Service*, 656 F.Supp. 593, 598 (D.Conn.1987), Local Rule 9(c) is strictly interpreted, and failure to properly controvert facts in opposing a summary judgment motion is an appropriate consideration in granting the motion.

In light of the recent Supreme Court directives encouraging the use of summary judgment as a tool in the resolution of factually harmonious cases, and the plaintiff's failure to comply with Local Rule 9(c), and because the plaintiff has not shown the existence of factors relevant to the finding of a franchise relationship, the defendant's motion for summary judgment is granted.

---

3. Other decisions have examined Conn.Gen.Stat. Section 42–133*e* (b), which applies to franchises generally and has a definition similar to Section 42–133*k* (b). *See Grand Light & Supply Co., Inc. v. Honeywell, Inc.*, 771 F.2d 672, 677 (2d Cir. 1985) (no franchise found where defendant's products constituted "scant" percentage of plaintiff's business); *McKeown Distributors, Inc. v. Gyp-Crete Corp.*, 618 F.Supp. 632, 642 (D.Conn. 1985) (no franchise found where only relevant factor present was defendant's right to prescribe advertising); *Muha v. United Oil Co., Inc.*, 180 Conn. 720, 726, 433 A.2d 1009, 1012 (1980) (no franchise found since defendant owned no trademark). *See also Hydro Air of Connecticut, Inc. v. Versa Technologies, Inc.*, 599 F.Supp. 1119, 1124–25 (D.Conn.1984) (discussion of franchise definition).

4. As his counsel conceded at oral argument, Ross could have refused to purchase Shell products at any time, and Shell would have had no claim, on that basis, that a breach of the dealer agreement had occurred.

5. Rule 9(c), R. Civ. P (D.Conn.) states:

(1) Upon motion for summary judgment there shall be annexed to the motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. (2) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

## Conclusion

For all of the foregoing reasons, the defendant's motion for summary judgment is granted.