**Robert KRESMERY, Plaintiff,**

v.

**SERVICE AMERICA CORPORATION, Defendant.**

**No. 3:97CV749 JBA.**

United States District Court, D. Connecticut.

Sept. 30, 1998.

Susan King Shaw, Farren & King, New Haven, CT, for plaintiff.

Brian E. Moran, Ralph W. Johnson, III, Robinson & Cole, Stamford, CT, for defendant.

### *RULING ON SUMMARY JUDGMENT*
### *[Doc. # 12]*

ARTERTON, District Judge.

## INTRODUCTION

This action arises from the plaintiff's claim of employment discrimination based upon his psychiatric disability under the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101 et. seq. In the pending motion to dismiss, defendant seeks to dismiss plaintiff's claim because: (1) such claim was discharged by the confirmation of the defendant's bankruptcy plan, (2) such claim is barred by judicial estoppel, and (3) to the extent the plaintiff's claim is based upon defendant's conduct prior to termination of plaintiff's employment on June 3, 1993, such claim is barred by plaintiff's failure to file such a complaint with either the Equal Employment Opportunities Commission ("EEOC") or the Connecticut Commission of Human Rights and Opportunities ("CCHRO").

## BACKGROUND

Mr. Kresmery was employed by the defendant as the Food Service Director for its account at Miles, Inc. in West Haven, Connecticut. (Kresmery Affidavit, ¶ 3) On August 28, 1992, plaintiff suffered a mental breakdown which required his hospitalization

and prevented him from working. (*Id.* at ¶ 4). On December 15, 1992, he filed a notice of claim with the Workers' Compensation Commission of Connecticut. (*Id.* at ¶ 18). On May 21, 1993, Mr. Kresmery was released from the hospital and with his treating physician's authorization notified the defendant of his intent to return to work. (*Id.* at ¶ 5) On June 3, 1993, the defendant notified the plaintiff that there was no work for him, but that it would look for work for him. (*Id.* at ¶ 5) Hearing nothing from defendant, in November 1993, Mr. Kresmery filed a discrimination claim with the CCHRO and the EEOC. (*Id.* at ¶ 9) In these complaints, the plaintiff alleged that the defendant's refusal to rehire him once he was cleared to return to work was because of his mental disability in violation of the ADA. (Complaint ¶ 7). Specifically, plaintiff alleges that the discriminatory practices include but are not limited to the Defendant's discharge of the plaintiff, without making reasonable accommodation. (Compl., ¶ 7).

On October 20, 1992, Service America Corporation voluntarily filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. (Steinmayer Affidavit, ¶ 4). On December 18, 1992, the bankruptcy court ordered the defendant to notify all named creditors of the February 1, 1993 "Bar Date" for any pre-petition claims. (*Id.* at ¶ 5). Because plaintiff's claim could not have arisen before his release to return to work on May 21, 1993, plaintiff had no pre-petition claims to file. Following the Bar Date, the bankruptcy reorganization procedures continued for an additional four months and on June 30, 1993, the defendant's bankruptcy plan was confirmed. (*Id.* at ¶ 7). Article XXIII § 13.01 of the confirmation plan discharged the debtors immediately from any contingent or noncontingent claim or debt and extinguished the debtors' liabilities for any and all dischargeable claims arising before June 30, 1993. (*Id.*)

## SUMMARY JUDGMENT STANDARD

A party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When a court is confronted with facts that permit several different conclusions, all inferences from the underlying facts must be drawn in the nonmovant's favor. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). The trial court must bear in mind that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant demonstrates an absence of material issues of fact, a limited burden of production shifts to the non-movant, which must "demonstrate more than 'some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial.'" *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (citations and emphasis omitted). Summary judgment then is granted only when "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), or, in other words, only if "no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994). The trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.*

## DISCUSSION

### I. Procedural defects in the summary judgment filings

As a preliminary matter, the Court notes that the Defendant has failed to submit to the Court a separate "short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried" as required by Local Rule of Civil Procedure 9(c). As a result or in addition, the plaintiff did not file a Local Rule 9(c) statement. Although each party

has submitted supporting affidavits, the parties' failure to comply with the local rules has created great difficulty for the Court in discerning whether or not the parties' claim certain facts to be disputed.

Local Rule 9(c) is more than a mere optional procedural nicety, rather it contains mandatory language and is "strictly interpreted." *Ross v. Shell Oil Co.*, 672 F.Supp. 63, 66 (D.Conn.1987) ("The mere filing of . . . memorandum and annexed affidavit which, when read as a whole, contain a 'statement' of facts . . . does not fulfill the requirement of a separate, discrete statement of such facts.") *Id.* *See also Knowles v. Postmaster General, United States Postal Service,* 656 F.Supp. 593, 598 (D.Conn.1987).

Due to the lack of either party's Local Rule 9(c) statement and the contradictory statements of facts contained in each side's memoranda submitted in support of their positions, the Court has been required to expend significant additional time and effort, otherwise unnecessary, to the parties' positions on the existence of disputed material facts. This disregard of the mandatory procedural rules serves neither the parties nor the Court well.

## II. Substantive analysis of Motion for Summary Judgment

Defendant asserts three separate arguments in support of its motion for summary judgment. First, the plaintiff's discrimination claim was discharged by confirmation of defendant's plan under Chapter 11. Second, the plaintiff's discrimination claim is judicially estopped by virtue of the plaintiff's stipulation for Agreement and Award in his workers' compensation claim. Finally, the plaintiff's discrimination claims relating to the defendant's conduct prior to his termination are time barred since the plaintiff failed to raise these claims in his complaints to the EEOC/CCHRO.

### A. Effect of defendant's reorganization on the plaintiff's discrimination claim

Defendant asserts that the bankruptcy court's confirmation of its bankruptcy plan discharged all debts incurred prior to the date of confirmation, including the plaintiff's discrimination claim. 11 U.S.C. § 1141(d). The Bankruptcy Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The definition of "claim" in the Bankruptcy Code is broad enough to include an obligation for which a civil action would be premature due to statutory prerequisites such as the right to sue letter. *See McSherry v. Trans World Airlines,* 81 F.3d 739, 740 (8th Cir.1996) (affirming the dismissal of an ADA claim arising postpetition but preconfirmation as discharged by the employer's bankruptcy).

Therefore, a "claim" for bankruptcy purposes may arise before such a claim would be cognizable in a nonbankruptcy context. The issue here is to decide when the plaintiff's discrimination claim arose and whether such discrimination occurred or continued after the confirmation date. It is important to identify the period in which the alleged discriminatory conduct is alleged to have arisen: 1) the pre-petition period before October 20, 1992; 2) the pre-confirmation period (postpetition but before confirmation), October 20, 1992–June 30, 1993; and 3) the post-confirmation period after June 30, 1993 through the present.

The plaintiff's claim is clearly not based upon any behavior by the defendant that arose during the pre-petition period since he was not released to return to work until May 21, 1993. Rather, the plaintiff asserts that the discriminatory conduct commenced during the post-petition/pre-confirmation period, that is, either on May 21, 1993 or June 3, 1993.

The Bankruptcy Code provides, in relevant part, that:

> the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation . . . whether or not a proof of a claim based on such debt is filed or deemed filed under Section 501 of

this title, such claim is allowed under Section 502 of this title, or the holder of such claim had accepted the plan ...

11 U.S.C. § 1141(d). Specifically, defendant claims that any liability incurred by its refusal to rehire the plaintiff occurred on June 3, 1998, prior to the June 30, 1993 plan confirmation which discharged all of the defendant's then existing debts. Defendant relies upon the Bankruptcy Code 1141(d), and Article XII, Section 12.03 of the Bankruptcy plan approved by the court that released the defendant debtor from pre-confirmation debts:

> Except as otherwise provided in the Plan, the Debtors are released from any claim and all claims or liabilities arising from actions taken in their capacity as such, and from any and all Claims, and obligations, rights, causes of action and liabilities which any holder of a claim against or interest in the debtors may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, *based in whole or in part upon any action or omission, transaction or other occurrence taking place on or before the Effective Date [June 30, 1993] in any way relating to the Debtors, the Bankruptcy Case, or the Plan.*

¶ 8 Exhibit D. (*emphasis added*).

■ Therefore, under the plain language of the Section 1141(d) of the bankruptcy code and the confirmed plan, the defendant's liability for employment discrimination against plaintiff based on its pre-confirmation has been discharged. An analogous result was reached in *McSherry*, 81 F.3d 739 (8th Cir. 1996). There, the employer Trans World Airlines ("TWA") terminated the plaintiff pilot's employment nine months after it filed a voluntary petition for reorganization in bankruptcy on January 31, 1992. Shortly after his dismissal, McSherry filed an administrative complaint with the Department of Labor (DOL) claiming discrimination under the ADA. Thereafter, on Aug. 12, 1993, TWA's Chapter 11 Bankruptcy plan was confirmed. The plan required all pre-confirmation claims to be filed with the bankruptcy court by Dec. 3, 1993. McSherry did not file a proof of claim with the bankruptcy court. Thereafter, in Fall 1993, the DOL completed its investigation and attempted to conciliate the dispute. After Dec. 6, 1993, TWA offered to settle the ADA claim, but McSherry refused. On April 12, 1994, McSherry received a right-to-sue letter from DOL, and on July 1, 1994, he filed suit in federal court, which dismissed the case. The Eighth Circuit affirmed, rejecting McSherry's argument that he did not have an ADA claim until he received his EEOC right-to-sue letter, holding that for purposes of the bankruptcy code, McSherry's ADA termination claim arose post-petition but before confirmation of the plan. Kresmery's attempt to distinguish *McSherry* based upon his theory of defendant's continuing harm from its ongoing refusal to rehire him is unpersuasive. (*See discussion infra. § B.*)

■ Alternatively, plaintiff contends that the plaintiff's claim was not dischargeable since it falls within the exception to discharge created for willful or malicious injury by the debtor to another entity under 11 U.S.C. § 523(a)(6). Before addressing the merits of this claimed exception, a threshold question is whether the Court has jurisdiction or whether the bankruptcy court exercises exclusive jurisdiction over this determination of dischargeability. Courts that have considered this issue are divided whether the bankruptcy court has exclusive or concurrent jurisdiction. *Compare In re Thibodeau,* 136 B.R. 7 (Bankr.D.Mass.1992) (concurrent jurisdiction) *with In re Padilla,* 84 B.R. 194 (Bankr.D.Colo.1987) (exclusive jurisdiction). Although the Second Circuit has not spoken, this Court will adopt the view that the district court has concurrent jurisdiction with the bankruptcy court following the reasoning in *Zachery III v. Whalen,* 1994 WL 411526 (N.D.N.Y.1994) (concluding after review of current caselaw that the trend is towards concurrent jurisdiction for claim dischargeability determinations). The Court notes parenthetically, however, that the determination of the dischargeability of a debt could have been made in the bankruptcy court. Bankruptcy Rule 4007. Nonetheless, the Court will consider the plaintiff's claim under the willful or malicious injury exception.

The exception to the general rule of dischargeability of all preconfirmation debts is

in Section 523 of the Bankruptcy Code. 11 U.S.C. § 523, which provides, in pertinent part, that:

(a) A discharge under section of this title does not discharge an individual debtor from any debt—

(B) if such debt is of a kind specified in paragraph (6) of this subsection.

\* \* \*

(6) for willful and malicious injury by the debtor to another entity or the property of another entity.

To establish that the debt falls within the exception, plaintiff would need to establish that: (1) his claim was not listed by the defendant in its petition, (2) he did not have notice nor actual knowledge of the case in time for timely filing of his claim, and (3) the debt is for the willful and malicious injury by the debtor to another or another's property.

■ Assuming for purposes of this motion that plaintiff satisfies the first two requirements, the remaining issue is whether the plaintiff has demonstrated the existence of evidence of employer conduct which could fall within this exception. 'willful and malicious' conduct in the context of § 523(a)(6) is intentional conduct causing an injury that is more than recklessness or negligent. "Congress regards the described conduct to be so socially reprehensible that indebtedness resulting from it is not worthy of discharge in bankruptcy ...." *In re Rex*, 150 B.R. 505 (Bankr.D.Mass.1993).

■ Defendant contends that the plaintiff has made no allegation of malice or willfulness nor produced any evidence of such conduct. Defendant relies upon *Zachery v. Whalen*, 1994 WL 411526 (N.D.N.Y.1994) for the proposition that a Title VII claim fails to qualify as a nondischargeable malicious injury for purposes of Section 523(b)(6). In *Zachery*, the court found that the plaintiff had failed to allege either willfulness or maliciousness in describing the defendant's underlying discriminatory conduct. Here, the plaintiff's only evidence of the defendant's maliciousness is in his affidavit, which states, "I believe that the defendant's conduct in connection with its ongoing failure to rehire me once I was cleared ... was intentional, willful, and malicious discrimination against me based upon my disability." (Kresmery Affidavit at ¶ 15). Other than the plaintiff's characterization of the defendant's conduct, there is no specific evidence or even description of the alleged acts in the record supporting these conclusory statements. The conclusory, self-serving nature of plaintiff's affidavit fails to satisfy the requirements of Fed.R.Civ.P. 56(e), and is insufficient to defend against a motion for summary judgment. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996) ("Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.") (*citation omitted*); *Tadros v. Coleman*, 717 F.Supp. 996, 1006 (S.D.N.Y.1989) ("[S]elf-serving, conclusory allegations cannot defeat" motion for summary judgment),*aff'd*, 898 F.2d 10 (2d Cir.), *cert. denied*, 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990). Absent any specific details or incidents of defendant's conduct which is inferably "malicious or willful," the plaintiff has failed to show the existence of any triable factual issue on whether his claim qualifies for the § 523(B)(6) exception to dischargeability.

Given that all defendant's obligations that arose before June 30, 1998 were discharged, and that the plaintiff's ADA claim does not as a matter of law qualify under the malicious injury exception, the Court grants defendant's motion for summary judgment with respect to the plaintiff's claim based upon defendant's preconfirmation conduct.

**B. Plaintiff's postconfirmation claims**

■ As a general rule, a successfully reorganized debtor under Chapter 11 of the Bankruptcy Code is liable for any independent conduct or claims which arose after confirmation of its bankruptcy plan. Therefore, the only remaining issue here is whether any of the defendant's alleged discriminatory acts took place after the confirmation date of June 30, 1995. Plaintiff contends that defendant's discrimination was ongoing and continued beyond the date of confirma-

tion since the defendant continued to fail to rehire him. Specifically, plaintiff asserts that the Defendant not only discharged the defendant on June 3, 1998, but continued to discriminate against him by its failure to rehire him after promising him it would continue to consider him for suitable work. Defendant contends that while the continuing violation doctrine might be appropriate in the statute of limitations context, it cannot be used to resurrect claims discharged by a bankruptcy. Defendant argues that the previous termination discrimination cannot be transformed into a continuing violation by the mere fact that defendant never rehired the plaintiff.

 In considering these arguments, the Court finds that the plaintiff's only claim for discrimination arises from his termination and not from the defendant's failure to rehire him. The record contains no evidence that the plaintiff ever re-applied for employment after June 3, 1993 or that defendant acted in any way other than to leave plaintiff's termination unchanged. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (holding that a continuing violation may not be based solely upon an employee's having suffered from the ongoing effects of an earlier discriminatory act).

As reflected in the ADA legislative history, the law applies to "qualified individuals with disabilities," a term that refers to job applicants and existing employees. Since the plaintiff was neither an employee nor a job applicant any time after June 3, 1998, the plaintiff's discrimination claims are restricted to the claims he brought in his EEOC filings, namely the defendant's termination of or refusal to reinstate the plaintiff on June 3, 1993. *Miller v. ITT*, 755 F.2d 20, 26 (2d Cir.1985) (dismissing discriminatory rehiring claim where employee had never affirmatively taken any step to reapply nor had specified a rehiring discrimination claim in his EEOC complaint).

Since the Court finds that the defendant's liability for the plaintiff's ADA claim, which arose postpetition but preconfirmation, was discharged by the confirmation of the defendant's reorganization plan under Chapter 11 of the Bankruptcy Code, the Court need not reach the defendant's alternate grounds for dismissal.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. # 12] is GRANTED. The clerk is directed to close this case.

IT IS SO ORDERED