**Charles L. WILLISON, Plaintiff,**

v.

**Harley L. RACE, Defendant.**

**No. 93–1171–CV–W–8.**

United States District Court,
W.D. Missouri,
Western Division.

Aug. 10, 1995.

James Kirk Rahm, Rahm, Rahm, Koenig & McVay, P.C., Warrensburg, MO and Erlene W. Krigel, Krigel & Krigel, P.C., Kansas City, MO, for Plaintiff.

James O. Schwinn, Wallace, Saunders, Austin, Brown & Enochs, Chtd., Kansas City, MO and Michael M. Tamburini, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Defendant.

### ORDER

STEVENS, District Judge.

Before the Court is an appeal from a Memorandum Opinion of the Bankruptcy Court that granted defendant's motion to dismiss plaintiff's complaint. In dismissing the complaint, the Bankruptcy Court held that a motorboat was not a "motor vehicle" within the meaning of 11 U.S.C. § 523(a)(9), which excepts from discharge in bankruptcy the debtor's liabilities for death and personal injury caused by the debtor's unlawful operation of a motor vehicle while under the influence of drugs or alcohol. After a *de novo* review, this Court concludes that a motorboat is a motor vehicle within the meaning of 11 U.S.C. § 523(a)(9), and therefore, a debt for personal injury caused by the debtor's unlawful operation of a motorboat while under the influence of alcohol is not dischargeable in bankruptcy. For the reasons below, this Court reverses the decision of the Bankruptcy Court and remands the action for further proceedings consistent with this order.

*Background*

The facts, which are not in dispute, are adopted from the Bankruptcy Court's findings.

On June 9, 1990, Defendant/Appellee Harley Race ("Race") was operating a motorboat on the Lake of the Ozarks. Race had been drinking alcohol. Race's boat collided with another motorboat in which the Plaintiff/Appellant, Charles Willison ("Willison"), and his wife, Brenda Willison, were passengers. Both Willison and his wife were injured as a result of the accident.

Brenda and Charles Willison filed suit against Race in the Circuit Court of Jackson County, Missouri. Willison's personal injury claims were severed from those of his wife, whose claims were tried to a jury. On May 15, 1992, the jury returned a verdict in favor of Brenda Willison, awarding her $250,000 in compensatory damages. The jury found that Race was negligent in the operation of his motorboat, but was not liable for punitive damages.

Based upon the jury findings in Brenda Willison's action, the parties agreed to a stipulation of facts in Charles Willison's action on February 18, 1993. The parties stipulated that Race was liable for negligence in the operation of his motorboat and was not liable for punitive damages. The only issue left to be resolved in the state court proceeding was the amount of the damages.

On March 5, 1993, Race filed a voluntary chapter 7 petition with the Bankruptcy Court, staying the state court action. Race listed his debt to Willison on Schedule F as contingent and unliquidated.

On April 14, 1993, Willison filed his dischargeability complaint, in which he alleged that the debt was one for injuries sustained by Race's operation of a motor vehicle while intoxicated, and thus was not dischargeable under 11 U.S.C. § 523(a)(9).

On June 18, 1993, the Bankruptcy Court granted a discharge to Race on all his dischargeable debts. Race filed a motion to dismiss this action under Bankruptcy Rule 7012. On October 13, 1993, the Bankruptcy Court heard statements of counsel and legal arguments. On October 21, 1993, the Bankruptcy Court granted Race's motion to dismiss, holding that a motorboat was not a "motor vehicle" for purposes of the discharge exception.

This appeal followed.

*Discussion*

■ The single issue presented on appeal is whether a motorboat is a "motor vehicle" as that term is used in 11 U.S.C. § 523(a)(9). The statute provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance . . . .

11 U.S.C. § 523(a)(9).

The Bankruptcy Court "reluctantly" found that motorized watercraft do not fall within the definition of the term "motor vehicle," for two primary reasons. First, the Bankruptcy Court determined that plain language analysis, the starting point in statutory interpretation, *see, e.g., Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), precludes a finding that a motorboat is a "motor vehicle." The Bankruptcy Court also found that the legislative history revealed Congress's concern with drunk driving exclusively on the highways; nothing indicated that Congress was explicitly concerned with accidents caused by drunk boaters. This inference of Congressional intent reinforced the Court's plain language reading. Second, the Bankruptcy Court recognized that exceptions to discharge must be narrowly construed against creditors and liberally construed in favor of the debtor, *see, e.g., Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), and construed § 523(a)(9) accordingly.

■ In considering this appeal, this Court must review the Bankruptcy Court's conclusions of law *de novo. In re Apex Oil Co.*, 884 F.2d 343, 348 (8th Cir.1989). The Bankrupt-

cy Court's findings of fact will not be disturbed unless they are clearly erroneous. Bankr.R. 8013; *Apex Oil,* 884 F.2d at 348.

This is a case of first impression in this Court and this Circuit. Two other federal district courts have addressed the issue, and both concluded that the term "motor vehicle" encompasses motorboats. Most recently, in *Boyce v. Greenway (In re Greenway),* Judge Nowlin of the Western District of Texas held that a motor boat qualified as a "motor vehicle" within the meaning of the bankruptcy statute. *Boyce v. Greenway (In re Greenway),* 180 B.R. 179 (W.D.Tex.1995). Judge Nowlin based his conclusion on the public policy informing 11 U.S.C. § 523(a)(9), and on the limited legislative history showing Congress's concern with drunk driving. *Id.* at 180–181. Judge Nowlin found no reasons why Congress would be concerned with drunk driving in one context, on the highways, but not in another context, on the waterways. *Id.* at 181.

Likewise, in *Williams v. Radivoj,* 111 B.R. 361 (S.D.Fla.1989), Judge Scott of the Southern District of Florida held that a motorboat was a "motor vehicle" within the meaning of the Bankruptcy Code. Judge Scott noted that Congress "was concerned with the consequences of drunk driving, and not the means." *Id.* at 362–63.

This Court embraces the logic in *Greenway* and *Williams* and reaches the same conclusion.

■ This case presents the Court with the straightforward task of statutory interpretation. Proper statutory construction must begin with "the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Thus, the first step the Court must take in determining whether the term "motor vehicle" encompasses motorized vessels is to look at the plain language of the Bankruptcy Code. Congress did not define "motor vehicle" in the Bankruptcy Code, and the term is not used throughout the Code. Consequently, the Court must look elsewhere to determine what the term "motor vehicle" means.

The parties offer various spins on how the term should be interpreted, but this Court is not disposed to import a definition wholesale from another statute without concern for context or purpose. In other statutes, Congress explicitly defines the term "motor vehicle" to serve the particular purpose of those statutes. *See, e.g.,* The National Traffic and Motor Vehicle Safety Act of 1966 at 15 U.S.C. §§ 1391(3) and 1901(15) (1992), and the Roberts Act at 40 U.S.C. § 703(1) (1992). There is no reason to believe that those definitions, crafted for specific laws, govern here.

To glean an understanding of the plain language of the statute, the Bankruptcy Court first looked to the dictionary definition of the term "motor vehicle," and then considered the terms "motor" and "vehicle" independently. The term "motor vehicle" is defined as "an automotive vehicle not operated on rails; esp.: one with rubber tires for use on highways." Webster's Ninth New Collegiate Dictionary 775 (1986). An alternative, and more expansive definition is of "motor vehicle" is "[a]ny self-propelled motor-powered vehicle that travels on wheels but does not run on rails." American Heritage Desk Dictionary 629 (1981). Based on the dictionary definition, the Bankruptcy Court concluded that the *ordinary* usage of the term encompasses *"only* vehicles designed for travel on the highways" (emphasis added).

This Court agrees that the most common understanding of a "motor vehicle" is a car or truck, but this Court does not find such a narrow definition mandated by a plain language reading of the statute. Automotive, although often thought of in the context of cars, simply means auto-mobile; it describes something moving under its own power. Vehicle is commonly understood to refer to a means of transportation or conveyance. The ordinary understanding of the term "motor vehicle" does not exclude all vehicles other than cars and trucks, particularly motorboats and aircraft.

The Bankruptcy Court next considered the terms "motor" and "vehicle" separately. The term motor, when used as an adjective, may be defined as "equipped with or driven by a motor" or "of, relating to, or involving an

automobile." Webster's New Collegiate Dictionary 745 (1979). A "vehicle" is a "device for carrying passengers, goods, or equipment, usu. one that moves on wheels or runners." American Heritage Desk Dictionary 1026 (1981). A motorized boat falls easily within these definitions.

The Bankruptcy Court expressed concern that an expansive definition of the term "motor vehicle" might include motor scooters, go-karts, riding lawn mowers, and even electric wheelchairs. However, 11 U.S.C. § 523(a)(9) excepts from discharge only those debts incurred as a result of "illegal" operation of motor vehicles due to intoxication. Regardless of the scope of the term "motor vehicle," the application of § 523(a)(9) is necessarily limited to situations in which operation of that vehicle while intoxicated is against the law.

The Bankruptcy Court noted that § 523(a)(9) does not contain the term "motorboat" or "motorcraft." The Bankruptcy Court suggests that because Congress could have explicitly addressed motorized boats in § 523(a)(9), its failure to do so, in light of the common understanding of the term "motor vehicle," warrants a conclusion that boats must be excluded from the definition. The Bankruptcy Court added "[h]ad Congress thought of it, it probably would have included motorboats within § 523(a)(9)."

On the other hand, Congress could have defined the term "motor vehicle" in such a way that the term would explicitly exclude boats, but it did not. Congress could have defined "motor vehicle" in such a way that it was clear that the provision applied only to cars, trucks, and the like. It did not. Perhaps Congress's failure to define explicitly the term "motor vehicle" reveals a deliberate choice to avoid a narrowing definition, one which might undermine the very commendable purpose of § 523(a)(9).

■ Consideration of the express statutory language does not preclude the Court from considering a motor boat to be a "motor vehicle," but beyond that, it yields little insight into the appropriate interpretation of the term "motor vehicle." As the *Williams* court noted, " '[m]otor vehicle' is a broad term that has no universally accepted meaning." *Williams v. Radivoj*, 111 B.R. 361, 362 (S.D.Fla.1989). Therefore, the Court must also look to Congress's intent. *Graven v. Fink (In re Graven)*, 936 F.2d 378, 384 (8th Cir.1991). In statutory interpretation, the legislative intent is the "all-important or controlling factor, and has been said to be the vital part, the heart, soul, and essence of the law." *Kansas City, Mo. v. Federal Pac. Elec. Co.*, 310 F.2d 271, 274–75 (1962), *cert. denied*, 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 415 (1963).

■ In ascertaining Congress's intent in drafting § 523(a)(9), the Court must look at both the policy motivating the Bankruptcy Act as a whole, and the policy concerns leading to specific provisions in that law. The Court should not construe phrases in isolation, but should "consider 'the design of the statute as a whole and ... its object and policy.' " *Graven v. Fink*, 936 F.2d 378, 384 (8th Cir.1991) (*quoting Crandon v. United States*, 494 U.S. 152, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)).

■ The Bankruptcy Code's overall objective is to offer a "fresh start" to insolvent debtors. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Accordingly, in order to give debtors a clean slate, the discharge of debts in bankruptcy must be as broad as possible.

The Bankruptcy Code offers a broad discharge, but not a blanket discharge. There are situations in which discharge would be not only inappropriate; it would fly squarely in the face of sound public policy. Congress recognized these situations and carved out important limits to the discharge privilege, such as the exception to discharge at § 523(a)(9).

■ In general, exceptions must be narrowly construed against an objecting creditor and in favor of the debtor. *See, e.g., Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *In re Long*, 774 F.2d 875, 879 (8th Cir.1985); *First State Ins. Co. v. Bryant (In re Bryant)*, 147 B.R. 507, 509 (Bankr.W.D.Mo.1992). However, exceptions cannot be construed so narrowly as to defeat Congress's intent in creating the exception.

When considering the meaning of § 523(a)(9), the Court must consider the purpose of that specific provision within the Code, and how it fits in with the rest of the Code. *See, e.g., Larsen v. Carter (In re Larsen),* 59 F.3d 783, 786 (8th Cir.1995). However broad the general purpose of the Bankruptcy Code may be, general language will not be held to apply when a matter is specifically dealt with elsewhere in a statute. *Fourco Glass Co. v. Transmirra Prods. Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). In *Fourco Glass,* Justice Whittaker emphasized that the specific prevails over the general, the narrow over the broad. *Id. See also Busic v. United States,* 446 U.S. 398, 405, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980) (Specific statute will be given precedence over a more general one).

Section 523(a)(9) of 11 U.S.C. was enacted with practically no reported legislative history. *In re Ganzer,* 54 B.R. 75, 76 (Bankr.D. Minn.1985). The section was amended by the Criminal Victims Protection Act of 1990. Nonetheless, it is not difficult to figure out what Congress intended to accomplish by including the provision. Congress's purpose was clearly to protect the victims of drunk drivers, to ensure that they are not further victimized by allowing their damage awards to be discharged by the driver's bankruptcy. The purpose of § 523(a)(9) was not to broaden the scope of the debtor's discharge, but rather, to narrow the scope of the discharge, to protect victims of debtors. Congress felt it was more important to safeguard the interests of persons physically injured by drunk drivers and the families of persons killed by drunk drivers than to afford the broadest discharge possible to the drunk driving debtor. For that reason, Congress incorporated § 523(a)(9) into the Bankruptcy Code.

The sparse legislative history available reveals that the provision was designed to "ensure that victims of the drunk driver do not have their judgments against the drunk driver discharged in bankruptcy." Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 1984 U.S.C.C.A.N. (98 Stat.) 587 (remarks of Senator Dole). Although the few statistics cited in the legislative history deal specifically with highway fatalities caused by drunk driver, this Court cannot conclude that therefore, the statute is aimed exclusively at victims of drunk drivers injured on the streets, and has no application to victims of drunks operating vehicles on other public thoroughfares. Clearly, the provision was enacted to protect the victims of irresponsible persons who get drunk and injure others. Congress could not have intended for the drunk boater's victim to suffer while the drunk boater floats away with a "fresh start."

Having determined that a motorboat is a "motor vehicle" for the purposes of 11 U.S.C. § 523(a)(9), this matter is remanded for a determination of whether Race's operation of the motorboat was unlawful because Race was intoxicated from using alcohol when the accident giving rise to Willison's injury occurred.

Accordingly, the decision of the bankruptcy judge is REVERSED and the matter is REMANDED for further proceedings.

IT IS SO ORDERED.