**In re David L. SODA & Leslie–Ann Soda, Debtors.**

**Henrietta Morse, Plaintiff,**

v.

**David L. Soda & Leslie–Ann Soda, Defendants.**

**David L. Soda & Leslie–Ann Soda, Plaintiffs,**

v.

**Laura Fleming & Richard Fleming, Defendants.**

**Bankruptcy No. 97–34762.**

**Adversary Nos. 98–3143, 98–3208.**

United States Bankruptcy Court, D. Connecticut.

April 17, 2001.

James D. Hirschfield, Cramer & Anderson, Litchfield, CT, for Henrietta Morse.

John M. Barton, III, Cantor, Floman, Gross, Kelly, Amendola & Sacramone, P.C., Orange, CT, for David L. Soda and Leslie–Ann Soda.

Robert S. Kolesnik, Kolesnik, Norris & Rado, Waterbury, CT, for Laura Fleming and Richard Fleming.

## CONSOLIDATED MEMORANDUM OF DECISION ON DEFENDANT DAVID L. SODA'S MOTIONS FOR SUMMARY JUDGMENT

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

This Memorandum of Decision sets forth the rationale for the Court's determination to grant in part, and deny in part, motions for summary judgment filed by the Debtor David L. Soda in the above-referenced and consolidated adversary proceedings.[1]

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

### III. PROCEDURAL BACKGROUND

#### A. The Bankruptcy Case

On December 1, 1997, David L. Soda and Leslie–Ann Soda (hereafter, the "Debtors"), commenced the instant bankruptcy case by the filing of a joint voluntary petition under Chapter 13 of the United States Bankruptcy Code. After several requests to extend a deadline for filing Schedules, Statements and a Chapter 13 Plan, the Debtors failed to meet an extended deadline of January 14, 1998. A hearing on a *Courts Motion to Dismiss Case For Failure to file Plan and Schedules* was scheduled for, but marked "off," on January 15, 1998, after the Debtors filed, on January 14, 1998, a *Motion to Convert Case From Chapter 13 to Chapter 7.* An *Order Converting Case From Chapter 13 to Chapter 7* entered on January 16, 1998. On January 23, 1998, the Debtors filed their Chapter 7 Schedules. A Chapter 7 Discharge Order entered on May 5, 1998.

#### B. The Adversary Proceedings

On April 20, 1998, Henrietta Morse (hereafter, "Morse") initiated Adversary Proceeding No. 98–3143, seeking a determination of nondischargeability of debt, through the filing of a *Complaint to Determine Dischargeability of Debt* pursuant to 11 U.S.C. §§ 523(a)(6) and (9). On July 15, 1998, the Debtors, David L. Soda and Leslie–Ann Soda, initiated Adversary Proceeding No. 98–3208 by filing a *Complaint For Dischargeability of Debt,* pursuant to 11 U.S.C. § 523(a)(9)[2], naming Laura and Richard Fleming as Defendants and seeking a determination of dischargeability of debt. By Motion dated July 23, 1998, the Debtors moved to consolidate Adversary

---

1. The various pleadings submitted by the parties in connection with this matter suggest that Debtor Leslie–Ann Soda's right to a full discharge in this bankruptcy case may not be in issue. Nevertheless, she is, and remains, a named party of record in these proceedings.

2. Earlier, on May 7, 1998, Richard Fleming and Laura Fleming filed a *Motion to Extend Time to File Complaint to Determine Dischargeability of Debt* (hereafter, the "Motion to Extend"), Doc. I.D. No. 32, accompanied by a *Complaint* which was assigned Adversary Proceeding Number 98–3150. The Motion to Extend was set for a May 27, 1998 hearing, but was marked "off" by agreement, to be rescheduled. On June 1, 1998, the Debtors filed an *Objection,* Doc. I.D. No. 37, to the Motion to Extend. The Motion to Extend and the Objection thereto were subsequently scheduled for a June 24, 1998 hearing, at which time the Motion to Extend was denied and the Objection was sustained. On July 14, 1998, an Order issued dismissing Adversary Proceeding Number 98–3150, and the file in that proceeding was closed on July 24, 1998.

Proceeding Nos. 98–3143 and 98–3208. After a hearing, the proceedings were consolidated, and the trial date was established as December 14, 1998.

### C. The Summary Judgment Motions

On December 1, 1999, the Court issued a letter alerting the litigants of possible dismissal of these consolidated proceedings due to inactivity pursuant to *United States District Court Local Rule 16.*[3] In response thereto, on December 20, 1999, the Debtor David Soda filed motions for summary judgment captioned *Defendant David L. Soda's Motion For Summary Judgment,* and *Plaintiff David L. Soda's Motion For Summary Judgment* (hereafter, and collectively, the "Summary Judgment Motions"), in the respective adversary proceedings. Accompanying the Summary Judgment Motions were legal briefs and documents captioned *Memorandum of Law in Support of Defendant David L. Soda's Motion For Summary Judgment. Defendant David L. Soda's Local Rule 9(c)1 Statement,*[4] *Memorandum of Law in Support of Plaintiff David L. Soda's Motion For Summary Judgment,* and *Plaintiff David L. Soda's Local Rule 9(c)1 Statement,* all filed in accordance with Rule 9(c) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut (hereafter, the "Local Rules"), made applicable to this proceeding by D. Conn. LBR 1001–1(b)2.

In response to the Summary Judgment Motions Morse filed *Plaintiff Henrietta Morse's Motion for Extension of Time to Respond to Motion For Summary Judgment* (hereafter, the "Extension Motion"), on January 10, 2000. An Order granting the Extension Motion was entered on January 14, 2000, permitting Morse an extension until February 11, 2000, when she did file *Plaintiff Henrietta Morse's Objection to Motion for Summary Judgment,* and *Plaintiff Henrietta Morses's Local Rule 9(c)(1)[sic] Statement.* On January 24, 2000, Laura Fleming and Richard Fleming filed *Defendants Laura Fleming and Richard Fleming's Objection to Motion For Summary Judgment,* along with *Defendants Laura Fleming and Richard Fleming's Local Rule 9(c)(1)[sic] Statement.*

## IV. DISCUSSION

### A. Bankruptcy Rule 7056(c)

Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, directs that summary judgment shall enter when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

When ruling on motions for summary judgment "the judge's function is not... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there are no material facts in dispute and all reasonable inferences are to be drawn, and all ambiguities resolved in favor of the non-moving party.

---

**3.** The December 14, 1998 trial was marked "off" at the request of Morse's counsel due to the anticipated filing of a summary judgment motion.

**4.** Although filed with original documents on December 20, 1999, the Rule 9(c)1 Statement was not docketed until February 16, 2000.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

However, to defeat a properly supported motion for summary judgment the non-moving party "may not rest upon the mere allegations or denials of its pleadings"; its response "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Local Rule 9(c)

■ Local Rule 9(c)[5] supplements Fed.R.Civ.P. 56(c) by requiring statements of material facts from each party to a summary judgment motion. Local Rule 9(c) "is strictly interpreted, and failure to properly controvert facts in opposing a summary judgment motion is an appropriate consideration in granting the motion." *Ross v. Shell Oil Co.*, 672 F.Supp. 63, 66 (D.Conn.1987) (citations omitted); *See also Booze v. Shawmut Bank, Connecticut*, 62 F.Supp.2d 593, 595 (D.Conn.1999); *Fowler*

*v. Connecticut Student Loan Foundation*, 250 B.R. 828, 830–31 (Bankr.D.Conn.2000).

### C. The Merits

In support of his Summary Judgment Motions, David Soda sets forth the following undisputed facts, among others. On June 28, 1997, shortly after 9:00 PM, David Soda, accompanied by Leslie–Ann Soda as a passenger, was operating his motorboat on Lake Zoar in Oxford, Connecticut, when his vessel collided with another boat operated by Thomas Fleming. Morse, Laura Fleming and Richard Fleming, passengers in the Thomas Fleming-driven boat, were injured in the collision, and have instituted civil suit in state court against David Soda and Thomas Fleming. The state court action asserts, *inter alia,* a cause of action sounding in negligence related to David Soda's operation of his boat while allegedly under the influence of intoxicating liquor.

Soda did not consume any alcoholic beverages prior to 7:00 PM on the date of the accident.[6] Following the accident, Thomas Fleming was arrested[7] for Operating a

---

**5.** D. Conn. L. Civ. R. 9(c), entitled "Motions for Summary Judgment," states:

 1. There shall be annexed to a motion for summary judgment a document entitled "Local Rule 9(c)1 Statement", which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried. All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 9(c)2.

 2. The papers opposing a motion for summary judgment shall include a document entitled "Local Rule 9(c)2 Statement," which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 9(c)1 Statement whether each of

the facts asserted by the moving party is admitted or denied. The Local Rule 9(c)2 Statement must also include in a separate section a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

 3. The statements referred to above shall be in addition to the material required by these Local Rules and the Federal Rules of Civil Procedure.

**6.** According to undisputed paragraphs 1 & 2 of Soda's Local Rule 9(c)(1) Statements, he arrived at Lake Zoar at approximately 1:30 PM and consumed no alcohol until docking the boat at a restaurant at approximately 7:00 PM.

**7.** Soda's Local Rule 9(c)(1) Statement representation that Thomas Fleming, "[o]n September 7, 1997, plead guilty to these charges," is disputed.

Vessel Without Proper Lights, and Operating a Vessel without a Safe Boating Certificate, both in violation of the requisite sections of the Connecticut General Statutes. Finally, and of special significance to the Section 523(a)(6) Count in Adversary Proceeding No. 98–3143, it is undisputed that Soda "did not intend to hit [the other boat]", and accordingly, David Soda's lack of such intent is "deemed admitted" for purposes of this matter. *See* Local Rule 9(c)(1).

Additional facts asserted in David Soda's Local Rule 9(c)(1) Statements, but controverted by the responsive Local Rule 9(c)(2) Statements, include, *inter alia*, that (i) he consumed only "two twelve ounce Bud Light beers along with pizzas and chicken wings" at a restaurant during the two and a quarter hour period preceding the accident, and (ii) the State of Connecticut Department of Environmental Protection (hereafter, the "D.E.P."), conducted an investigation of the accident and concluded:

(a) that the cause of the accident was the operation of the Fleming boat without a stern light, and

(b) that Soda was not under the influence of either alcohol or drugs at the time of the incident.

Thus, the responsive Local Rule 9(c)(2) Statements do place in issue the question of whether Soda was "intoxicated" at the time of the accident. In addition, presented and ripe for resolution at this time is the question of whether the phrase "motor vehicle" as used in Section 523(a)(9) includes a "motorboat." The Court now turns to consideration of summary judgment on the various claims in these consolidated proceedings.

### 1. Bankruptcy Code Section 523(a)(6) ("Willful and Malicious Injury")

 Bankruptcy Code Section 523(a)(6) excepts from a debtor's discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." While neither "willful" and/or "malicious" conduct is defined by the Bankruptcy Code, the United States Supreme Court has clarified that Section 523(a)(6) renders non-dischargeable "only acts done with *actual intent to cause injury*", not merely "acts, done intentionally, that cause injury". *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis added). The lack of actual intent to cause injury is a material fact, not controverted, and therefore, deemed admitted in this proceeding. Accordingly, Section 523(a)(6) does not preclude dischargeability of any debt arising from this accident. Summary judgment shall enter in favor of David Soda on the Section 523(a)(6) claim in Adversary Proceeding No. 98–3143.

### 2. Bankruptcy Code Section 523(a)(9) ("Motor Vehicle") [8]

 Bankruptcy Code Section 523(a)(9) excepts from discharge any debts "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug or another substance." The Debtor argues, *inter alia*, that the plain meaning

---

**8.** As this question is purely a matter of law, the Court decides this issue notwithstanding the opposing parties response to the Debtor's argument—"[it] does not follow that this Court may decide [this] issue of first impression based on a motion for summary judgment, since the law itself under the facts will be adjudicated has been admitted by the debt- or to be unsettled in this jurisdiction, and indeed is in flux.", *see Plaintiff Henrietta Morse's Objection to Motion for Summary Judgment*, Doc. I.D. No. 18, and *Defendant Laura Fleming and Richard Fleming's Objection to Motion for Summary Judgment*, Doc. I.D. No. 15.

of the term "motor vehicle" does not include a motorboat, that Congress has consistently used "motor vehicle" to refer exclusively to automobiles in other statutes, that later Congressional discussion related to the *Criminal Victims Act, see* S.Rep. No. 101–434, 101st Cong. 2nd Sess. 3 (1990), U.S.Code Cong. & Admin.News at 4065–66, makes it clear that the intent of the legislature in enacting Section 523(a)(9) was to deter alcohol-related highway fatalities, and that a proposed but failed Congressional attempt to amend Section 523(a)(9) by adding, *inter alia,* the words "water craft" or "aircraft" after the existing phrase "motor vehicle" makes it similarly clear. *See Memoranda of Law in Support of David L. Soda's Motion for Summary Judgment,* at 3–9.

The Bankruptcy Code does not define the term "motor vehicle" and there is a split among the reported cases as to whether or not "motor vehicle" includes motorboats. *E.g., Boyce v. Greenway (Matter of Greenway),* 71 F.3d 1177, 1180 (5th Cir.1996) (holding that the "plain and common meaning of the term 'motor vehicle' does not include motorboats."); *Williams v. Radivoj,* 111 B.R. 361, 363 (S.D.Fla.1989) (ruling that a motorboat is a "motor vehicle" and observing that there is "little distinction between a highway, an airway, and a waterway, or between an automobile, an airplane, and a boat."); *Schachter v. Fall (In re Fall),* 192 B.R. 16, 21 (Bankr.D.N.H.1995) (holding that it is "absolutely clear that the term 'motor vehicle' pertains to a means of transportation on land, not water").

In *Willison v. Race,* 192 B.R. 949, 954 (W.D.Mo.1995), the United States District Court for the Western District of Missouri, ascribing a broad interpretation to "motor vehicle", and reversing a Bankruptcy

Court determination on this issue,[9] reasoned:

Section 523(a)(9) of 11 U.S.C. was enacted with practically no reported legislative history. *In re Ganzer,* 54 B.R. 75, 76 (Bankr.D.Minn.1985). The section was amended by the Criminal Victims Protection Act of 1990. Nonetheless, it is not difficult to figure out what Congress intended to accomplish by including the provision. Congress's purpose was clearly to protect the victims of drunk drivers, to ensure that they are not further victimized by allowing their damage awards to be discharged by the driver's bankruptcy. The purpose of § 523(a)(9) was not to broaden the scope of the debtor's discharge, but rather, to narrow the scope of the discharge, to protect victims of debtors. Congress felt it was more important to safeguard the interests of persons physically injured by drunk drivers and the families of persons killed by drunk drivers than to afford the broadest discharge possible to the drunk driving debtor. For that reason, Congress incorporated § 523(a)(9) into the Bankruptcy Code.

The sparse legislative history available reveals that the provision was designed to "ensure that victims of the drunk driver do not have their judgments against the drunk driver discharged in bankruptcy." Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 1984 U.S.C.C.A.N. (98 Stat.) 587 (remarks of Senator Dole). Although the few statistics cited in the legislative history deal specifically with highway fatalities caused by drunk driver[s], this Court cannot conclude that therefore, the statute is aimed exclusively at victims of drunk drivers injured on the streets, and has no application to victims of drunks

---

**9.** *In re Race,* 159 B.R. 857 (Bankr.W.D.Mo. 1993).

operating vehicles on other public thoroughfares. Clearly, the provision was enacted to protect the victims of irresponsible persons who get drunk and injure others. Congress could not have intended for the drunk boater's victim to suffer while the drunk boater floats away with a "fresh start."

This Court, for the reasons expressed by the District Court in *Willison v. Race,* aligns itself with that Court, and those other courts which have determined motorboats to be within the phrase "motor vehicle" as used in Section 523(a)(2)(9).

The Court, of course, is fully cognizant of the *Willison v. Race* Bankruptcy Court's subsequent opinion, applying and following the District Court opinion as the law of the case, but criticizing of the District Court in view of (i) subsequent statements by United States Representative Vernon J. Ehlers in connection with the Boating and Aviation Operation Safety Act of 1996, and (ii) in light of the District Court's reliance on a case subsequently reversed.[10] *In re Race,* 198 B.R. 740, 743 (Bankr.W.D.Mo.1996). First, this Court is not bound by and finds unpersuasive the Fifth Circuit decision in *Matter of Greenway.* Second, this Court find's no support in Representative Ehlers' remarks for the conclusion that the phrase "motor vehicle" in Section 523(a)(9) does not encompass motorboats. Representative Ehlers' record comments of June 4, 1996, followed the Fifth Circuit decision in *Matter of Greenway,* decided January 10, 1996, and do not appear to be an attempt to expand Section 523(a)(9), but rather, simply sought, in view of cases like *Matter of Greenway,* to clarify it was intended at the time of the enactment of Section 523(2)(9) that aircraft and water craft were "motor vehicles." As Representative Ehlers remarked:

> So it is not only necessary to pass this particular bill to make certain that we include aircraft and watercraft as vehicles whose illegal operations by someone who is drunk or on drugs results in a nondischargeable debt during bankruptcy, but it is also very important to make this clear because the courts have ruled in different fashions in these various cases.
>
> . . . .
>
> The bill itself is very simple. It simply makes clear that anyone who is operating a motor vehicle, a watercraft or an aircraft illegally by virtue of being intoxicated from using alcohol, a drug or another substance may not hide from responsibility for damages by making this a dischargeable debt by declaring bankruptcy.

142 Cong. Rec. H5784–01 (June 4, 1996).

Similarly, the Debtor's cited reference to the Congressional Record discussion, concerning the Criminal Victims Protection Act—"23,352 alcohol-related highway fatalities" in 1988—"[a] drunk driving crash in which an innocent victim is injured or killed is a tragedy"[11]—cannot fairly be read as determinative that the Congressional intent in enacting Section 523(a)(9) focused *exclusively* on highway fatalities. This Court believes that the Congress, in enacting Section 523(a)(9), had the simple

---

**10.** In *Willison v. Race, supra,* 192 B.R. at 952, the District Court cited in support of the determination that "motor vehicle" includes a motor boat, *inter alia,* a Western District of Texas District Court Judge's reversal of the Bankruptcy Court on this issue, *see Boyce v. Greenway (In re Greenway),* 180 B.R. 179 (W.D.Tex.1995) which itself was subsequently reversed by the United States Court of Appeals for the Fifth Circuit in *Boyce v. Greenway (Matter of Greenway),* 71 F.3d 1177, 1180 (5th Cir.1996).

**11.** S.Rep. No. 101–434, 101 Cong.2d Sess. 3 (1990), U.S.Code Cong. & Admin.News at 4065–66.

goal protecting innocent victims by precluding drunks and drug addicts from escaping responsibility for certain acts and was fully appreciative that an innocent victim injured or killed by a drunk while driving a boat is as much a tragedy as an innocent victim injured or killed by a drunk driving a car.

For these reasons this Court concludes that the phrase "motor vehicle" as used in Section 523(a)(9) includes a motorboat.

3. *Bankruptcy Code Section 523(a)(9) ("Intoxication")*

 Finally, the Court turns to the issue of the Debtor David Soda's sobriety at the time of the accident. This material fact was clearly controverted in the relevant Local Rule 9(c)(2) Statements, and no other aspect of the record augers against a conclusion that this factual matter remains a genuine issue as to the Section 532(a)(9) claims in these consolidated proceedings. Summary judgment would therefore be inappropriate as to this issue.

## V. CONCLUSION

Because it is admitted that the Debtor David Soda lacked an actual intent to cause injury, there is no genuine issue as to any material fact in regard to the request for a determination of nondischargeability pursuant to Section 523(a)(6). Accordingly, the Debtor David Soda's Motion for Summary Judgment as to Section 523(a)(6) in Adversary Proceeding No. 98–3143 shall be **GRANTED** by separate order.

Because the phrase "motor vehicle" as used in Section 523(a)(9) includes a motorboat, and because there remains a genuine issue for trial in these consolidated adversary proceedings, the Debtor David Soda's Motion for Summary Judgment as to Section 523(a)(9) in Adversary Proceeding

Nos. 98–3143 and 98–3208 shall be **DENIED** by separate order.