**In re Daniel A. DILK, Debtor.**

**Randall D. Delph and Rose A. Delph, Plaintiffs,**

v.

**Daniel A. Dilk, Defendant.**

**Bankruptcy No. 03–07725–JKC–11. Adversary No. 03–0525.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

July 13, 2004.

Charles V. Traylor, Indianapolis, IN, for Creditor–Objector.

Scott R. Alexander, Indianapolis, IN, for Debtor.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIM UNDER 11 U.S.C. § 523(a)(9)

JAMES K. COACHYS, Bankruptcy Judge.

This matter comes before the Court on Defendant Daniel A. Dilk's Motion to Dismiss the "First Claim For Nondischargeability" alleged in Plaintiffs Randall D. and Rose A. Delph's Adversary Complaint Objecting to Discharge of Debt. The Court conducted a hearing on December 15, 2003, and now issues the following Order.[1]

#### Background

In their Complaint, the Delphs allege that, on July 14, 2001, Dilk piloted a motorboat into the boat occupied by Randall, causing multiple serious injuries. In their First Claim For Nondischargeability, the Delphs ask that any damages arising from the collision be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(9). That section exempts from discharge debts re-

---

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 11 U.S.C. § 157(b)(2)(I).

sulting from the "death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful[2] because the debtor was intoxicated from using alcohol, a drug or another substance." In his Motion to Dismiss, Dilk argues that the term "motor vehicle," as used in § 523(a)(9), does not include motorboats and that the Delphs have failed, as a matter of law, to state a claim upon which relief can be granted. The Court must disagree.

### Applicable Standards

The purpose of a motion to dismiss under Fed.R.Civ.P. 12(b)(6)-made applicable to bankruptcy pursuant to Fed.R.Bankr.P 7012-is to challenge the legal sufficiency of a complaint, not the merits of the case. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir.1998); *United States v. Sherwin–Williams Co.,* 165 F.Supp.2d 797, 803 (C.D.Ill.2001). When ruling on a motion to dismiss, the court "must accept as true all well-pleaded factual allegations in the claim, and draw all reasonable inferences in the light most favorable to the nonmoving party." *Sherwin–Williams,* 165 F.Supp.2d at 803 (citing *Gutierrez v. Peters,* 111 F.3d 1364, 1368–69 (7th Cir.1997)). Dismissal is appropriate only if it appears beyond doubt that the nonmoving party can prove no set of facts that would entitle the nonmoving party to the relief requested in the complaint. *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir.1999). The nonmoving party must allege all the elements for each cause of action to withstand a motion to dismiss. *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992).

■ The Bankruptcy Code's overall objective is to offer a "fresh start" to insolvent debtors. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Accordingly, in order to give debtors a clean slate, the discharge of debts in bankruptcy must be as broad as possible. In general, exceptions to discharge must be narrowly construed against an objecting creditor and in favor of the debtor. *See, e.g., Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233(1971); *In re Long,* 774 F.2d 875, 879 (8th Cir.1985); *First State Ins. Co. v. Bryant (In re Bryant),* 147 B.R. 507, 509 (Bankr. W.D.Mo.1992). However, exceptions cannot be construed so narrowly as to defeat Congress's intent in creating the exception. *Willison v. Race (In re Race),* 192 B.R. 949, 953 (W.D.Mo.1995).

### Discussion and Decision

■ The Code does not define "motor vehicle." It is up to this Court, then, to determine its meaning for purposes of § 523(a)(9). "Where a word or a phrase has not been otherwise defined in a statute, a court should give it its plain and ordinary meaning." *Bailey v. City of Lawrence,* 972 F.2d 1447, 1451 (7th Cir. 1992). Because the best method of discerning congressional intent is to examine the words Congress used in the statute, the Court starts with the language of the statute. *See Meredith v. Bowen,* 833 F.2d 650, 654 (7th Cir.1987).

■ The term "motor vehicle" has been defined as "an automotive vehicle not operated on rails; esp: one with rubber tires for use on highways," WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 775 (1986); as "any transportation vehicle designed for use on highways, as an automobile, bus, or truck," RANDOM HOUSE COLLEGE DICTIONARY

---

**2.** Operating a motor vehicle while intoxicated is prohibited under Indiana law by virtue of IND. CODE § 14–15–8–8. The offense is a Class D felony if it results in the serious bodily injury of another.

871 (revised ed.1980); and as a "road vehicle powered by an engine." OXFORD ENGLISH DICTIONARY (2004 online ed.). These definitions, while consistent with one another, do not necessarily lead the Court to conclude that the term "motor vehicle" is clear and unambiguous. Statutory language is said to be ambiguous if reasonable minds differ as to its meaning. Case law itself suggests that the term "motor vehicle" is ambiguous and subject to interpretation. Compare *Race*, 192 B.R. at 953 (term "motor vehicle" is broad enough to include motorboats); *Soda v. Fleming (In re Soda)*, 261 B.R. 342, 350 (Bankr. D.Conn.2001) (same); *Williams v. Radivoj (In re Radivoj)*, 111 B.R. 361, 362 (S.D.Fla.1989) ("'[M]otor vehicle'" is a broad term with no universally accepted meaning.") *with Boyce v. Greenway (In re Greenway)*, 71 F.3d 1177, 1180 (5th Cir. 1996) (holding that "plain and common meaning of the term 'motor vehicle' does not include motorboats."), *cert. denied*, 517 U.S. 1244, 116 S.Ct. 2499, 135 L.Ed.2d 191 (1996) and *Schachter v. Fall (In re Fall)*, 192 B.R. 16, 21 (Bankr.D.N.H.1995) (holding that it is "absolutely clear that the term 'motor vehicle' pertains to a means of transportation on land, not water.").

■ For that reason alone, the Court is justified in looking beyond the language of § 523(a)(9) to discern its meaning. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 326–27 (7th Cir.1995). Even assuming, however, that the term "motor vehicle" unambiguously excludes motorboats, the Court may look past "the express language of a statute . . . where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." *United States v. 916 Douglas Ave.*, 903 F.2d 490, 492 (7th Cir.1990), *cert. denied*, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991); *see also Marlowe v. Bottarelli*, 938

F.2d 807, 812 (7th Cir.1991) ("The general rule is that where a text is unambiguous, its plain language controls except in the rare case where the application of the statute as written will produce a result 'demonstrably at odds with the intentions of the drafters.'") (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991)) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). As explained by the United States Supreme Court:

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently . . . even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination."

*United States v. American Trucking Ass'ns*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940) (citations omitted).

Arguably, the distinction between "motor vehicle" and "motorboat" advanced by Dilk will lead to an unreasonable result in that it would allow a debtor to discharge a drunk driving-related debt if he was fortunate enough to be driving a motorboat

rather than a car or truck. The victim of such an accident would, however, not be so fortunate. Such a result, in the very least, warrants further inquiry by the Court into Congress's objectives in enacting § 523(a)(9).

With that said, the Court is mindful that the plain meaning of a statute should not be disregarded lightly. According to the Supreme Court:

> The interpretation of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, have said. Obviously there is danger that the courts' conclusions as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion.

*Id.* at 544, 60 S.Ct. at 1064. The Court recognizes the danger here but is nevertheless compelled to look beyond the alleged literal meaning of § 523(a)(9) to avoid a result that is arguably contrary to the statute's purpose.

Unfortunately, the legislative history with respect to the § 523(a)(9), as originally enacted,[3] is frustratingly sparse. The district court *Race* explained:

> Section 523(9) was enacted in 1984 with practically no reported legislative histo-

ry. *In re Ganzer,* 54 B.R. 75, 76 (Bankr. D.Minn.1985). The section was amended by the Criminal Victims Protection Act of 1990. Nonetheless, it is not difficult to figure out what Congress intended to accomplish by including the provision. Congress's purpose was clearly to protect the victims of drunk drivers, to ensure that they are not further victimized by allowing their damage awards to be discharged by the driver's bankruptcy. The purpose of § 523(a)(9) was not to broaden the scope of the debtor's discharge, but to narrow the scope of the discharge, to protect victims of debtors. Congress felt it was more important to safeguard the interests of persons physically injured by drunk drivers and the families of persons killed by drunk drivers than to afford the broadest discharge possible to the drunk driving debtor. For that reason, Congress incorporated § 523(a)(9) into the Bankruptcy Code.

The sparse legislative history available reveals that the provision was designed to "ensure that victims of the drunk driver do not have their judgments against the drunk driver discharged in bankruptcy." Bankruptcy Amendments and Federal Judgment Act of 1984, Pub.L.No. 98–353, 1984 U.S.C.C.A.N. (98 Stat.) 587 (remarks of Senator Dole). Although the few statistics cited in the legislative history deal specifically with highway fatalities caused by drunk driver[s], this Court cannot conclude that therefore, the statute is aimed exclusively at victims of

---

**3.** As originally enacted, § 523(a)(9) excepted those debts arising "from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its

territories wherein such motor vehicle was operated." Pub.L.No. 98–353. The 1990 amendments broadened the exception by removing the requirement that the debt be evidenced by a judgment and by including drug-based intoxication. The exception was also made applicable in Chapter 13 cases. *See* Pub.L.No. 101–647 and 101–581.

drunk drivers that were injured on the streets, and has no application to victims of drunk drivers operating vehicles on other public thoroughfares. Clearly, the provision was enacted to protect the victims of irresponsible persons who get drunk and injure others. Congress could not have intended for the drunk boater's victim to suffer while the drunk driver floats away with a fresh start. *Race,* 192 B.R. at 954.

In its report in favor of the 1990 amendments to § 523(a)(9), the Senate Judiciary Committee found that "Congress sought three objectives when it adopted Sec. 523(a)(9): (1) to deter drunk driving; (2) to ensure that those who caused injury by driving drunk did not escape civil liability through the bankruptcy laws; and (3) to protect victims of drunk driving." S. REP. No. 101–434 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4065, 4069. Remembering that the statute's application is limited by state law, these goals apply with equal force to all types of vehicles, including motorboats. As further stated by the Committee, "Congress traditionally has prevented those guilty of criminal acts from discharging debts, if discharge would result in the failure to pay the damages of their victims." *Id.* at 4067. From this, it would be difficult to conclude that Congress intended the distinction advanced by Dilk. Such a distinction would, in this Court's opinion, frustrate the overall purpose of § 523(a)(9) and lead to an absurd result where the type of vehicle, and not the illegal conduct of the debtor, defines whether a drunk driving-related debt is excepted from discharge.

The Court finds further support for this opinion in Congress's subsequent attempts to amend § 523(a)(9) to explicitly include watercraft. The effort to amend

§ 523(a)(9) appears to have first begun in 1996 when the United States House of Representatives passed a bill, the Boating and Aviation Operation Safety Act of 1996, that would have amended § 523(a)(9) by inserting "watercraft" and "aircraft" after "motor vehicle." H.R. 234, 104th Cong. § 2. Prior to the House vote, the sponsor of the bill, Representative Vernon J. Ehlers of Michigan, offered the following in support:

> As my colleagues have heard, this bill is necessary because the current law simply specifies motor vehicle, and that has been interpreted in three different ways by the courts....
>
> So it is not only necessary to pass this particular bill to make certain that we include aircraft and watercraft as vehicles whose illegal operations by someone who is drunk or on drugs results in a nondischargeable debt during bankruptcy but it is also very important to make this clear because the courts have ruled in different fashions in these various cases. Therefore, I appreciate the committee taking up the bill and giving us an opportunity to *clarify* this.
>
> The bill itself is very simple. *It simply makes clear* that anyone who is operating a motor vehicle, a watercraft or an aircraft illegally by virtue of being intoxicated from using alcohol, a drug or another substance may not hide from responsibility for damages by making this a dischargeable debt by declaring bankruptcy.

142 Cong.Rec. H5784–01 (June 4, 1996) (italics added). Representative Ehlers' emphasis on providing clarity is significant and supports the conclusion that Congress never intended § 523(a)(9) to be limited to cars, trucks, buses and other road vehicles.[4] It appears that the legislature's use

---

**4.** The Court notes that the bankruptcy court in *Willison v. Race (In re Race)* took a differ-

of the term "motor vehicle"-a term which has understandably been given a more limited definition by some courts-was the product of Congressional oversight. Representative Ehlers admitted as much in his statements in support of a similar amendment proposed in 1997. *See* 143 Cong. Rec. H10660–02 (Nov. 12, 1997) (stating that the amendment "seeks to correct what I believe was a bill-drafting oversight involving our bankruptcy laws.")

Admittedly, once referred to the Senate, H.R. 234 did not make it out of committee, although there is no legislative history suggesting why. Similar amendments, however, have been included in nearly every bankruptcy-reform proposal introduced since 1997. *See* H.R. 764, 105th Cong. § 10; S. 625, 106th Cong. § 1212 (1999); H.R. 833, 106th Cong. § 1113 (1999); S. 220, 107th Cong. § 1209 (2001); H.R. 333, 107th Cong. § 1209 (2001); S. 420, 107th Cong. § 1209 (2001); H.R. 6744, 107th Cong. § 1209 (2002); H.R. 975, 108th Cong. § 1209 (2003). Significantly, the proposed amendment to § 523(a)(9) usually appears under the heading "Technical Amendments," suggesting that the addition of "watercraft," "vessel" and/or "aircraft" does not work a substantive change to the statute but is merely a point of clarification. While bankruptcy reform has met with various well-publicized obstacles preventing its enactment, there is nothing to suggest that the changes to § 523(a)(9) have been a sticking point in the debate. *See, e.g., Texas Homestead Law Change Tied Up With Bankruptcy Bill,* Hous. Chron., Sept. 17, 2002, at 4; Lorna Collier, *Leaders Divided Over Proposal on Anti–Abortion Debt,* Chi. Trib., June 5, 2002, Women's News at 3.

### Conclusion

Based on the available legislative history, the Court must conclude that Congress ly enacted, the statute referred to "liability incurred as a result of a debtor's operation of a motor vehicle while legally intoxicated." According to the Senate's Report on the 1990 amendments to § 523(a)(9), "[t]he statutory language could be read to imply that section 523(a)(9) makes nondischargeable only those debts arising from liability incurred as the result of alcohol abuse." S. Rep. No. 101–434 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4065, 4070. Based on the available legislative history, it appears that Congress intended "intoxicated" to refer to both drug and alcohol impairment. *See id.* at 4070–71. It chose, however, to amend the statute by inserting "or impaired by use of alcohol or drugs" after the phrase "legally intoxicated" rather than by explicitly defining "intoxicated" to include drug impairment. As noted by the Senate Report, the "change will make clear that drivers may not escape liability or seek a discharge of debts owed as a result of driving while impaired or intoxicated." *Id.* The manner in which the statute was amended does not, in this Court's opinion, speak to Congress's original intent.

---

ent view of H.R. 234:

> This Court believes that the introduction and potential passage of a bill by Congress to amend section 523(a)(9) to add the terms watercraft and aircraft greatly supports the conclusion that the term "motor vehicle" in section 523(a)(9) does not encompass motorboats. The proposed amendment begs the obvious question: Why would Congress amend section 523(a)(9) to add watercraft and aircraft if the term "motor vehicle" already include same?

*Willison v. Race,* 198 B.R. 740, 743 (Bankr. W.D.Mo.1996) (on remand). This Court disagrees that the House of Representatives' decision to amend the statute by adding the term "watercraft," rather than by explicitly defining "motor vehicle" to include motorboats, is significant. Most obviously, the amendment proposed to include *all* boats, not just motorboats, within the statute's purview, thereby making the addition of the word "watercraft" necessary. Furthermore, Congress may have simply taken heed of the more limited dictionary definition of "motor vehicle" that had already been noted by several courts. *See e.g., Greenway,* 71 F.3d at 1180.

Other changes made to § 523(a)(9) offer further instruction. For instance, as original-

intended motorboats to fall within § 523(a)(9)'s purview. Clearly, the distinction between "motor vehicle" and "motorboat" propounded by Dilk leads to an inequitable and unreasonable result at odds with the overall purpose of the statute. To hold otherwise would allow a class of intoxicated drivers to escape liability under the discharge provisions of the Bankruptcy Code, further victimizing those injured by their criminal behavior. This is exactly what Congress sought to remedy through § 523(a)(9). Accordingly, Dilk's Motion to Dismiss is DENIED. The Court will issue a scheduling order setting this matter for a pre-trial conference in the near future.

SO ORDERED.