**In re Gregory N. HART and Donamarie R. Remus–Hart, Debtors.**

**Justin Kyle Simons, Carl Daniel Simons, and Jessy James Simons, Plaintiffs,**

v.

**Gregory Nathan Hart, Defendant.**

**Bankruptcy No. SL 05–18998. Adversary No. 05–81526.**

United States Bankruptcy Court, W.D. Michigan.

Aug. 2, 2006.

Pamela R. Tripp, Law Office of Pamela Tripp, Okemos, MI, for Debtors.

## OPINION

JO ANN C. STEVENSON, Chief Judge.

This matter comes before the court upon the Complaint to Determine Non–Dischargeability pursuant to 11 U.S.C. § 523(a)(6) and § 523(a)(9), filed by Carl Daniel Simons, Jessy James Simons and Justin Kyle Simons.

Presented in this adversary proceeding are claims that arise in a case referred to this court by the Standing Order of Reference entered by the United States District Court for the Western District of Michigan on July 24, 1984. This court has jurisdiction over this case pursuant to 28 U.S.C.

§ 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, the bankruptcy court is authorized to enter a final judgment subject to those appeal rights afforded by 28 U.S.C. § 158 and Fed. R. Bankr.P. 8001 et. seq.

The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052. In reaching its determinations, this court has considered the oral arguments made by the parties, their pleadings and briefs.

## BACKGROUND

On May 17, 2005 at approximately 4:45 p.m., Carl Simons (Simons or Plaintiff) was riding his motorcycle when a car driven by Gregory Hart (Hart or Defendant) attempted to make a left-hand turn and collided with Simons' motorcycle.

Deputy Mark O'Farrell arrived at the accident scene after receiving a 911 call from a witness. O'Farrell located Simons near the side of the road and discovered that his left leg had been seriously injured. In fact, it was severed approximately six inches below the hip.

Also at this point, O'Farrell determined that Hart was the driver of the car and was at fault in the accident. (O'Farrell Affidavit, Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment, Exhibit A, Page 2, ¶ 6). O'Farrell also observed that Hart was impaired by alcohol. (O'Farrell Affidavit, Page 2, ¶ 7).

Before O'Farrell proceeded to further investigate the accident however, he waited for an ambulance to arrive to assist Simons. Once Simons was safely on his way to the hospital, O'Farrell turned his attention back to Hart. O'Farrell asked Hart to explain what happened, and Hart replied that he did not see the motorcycle when he was turning left, and inadvertently hit the motorcycle and its driver.

O'Farrell proceeded to interview another witness before continuing his questioning of Hart. O'Farrell asked Hart if he had been drinking alcohol prior to the accident. Hart said he had not.

A preliminary breath test (PBT) was administered to confirm Hart's denial. The result of the PBT was .051, confirming that Hart had indeed been drinking. When confronted with this evidence, Hart admitted that he had been at a bowling alley and drank one beer at approximately 3:30 p.m. O'Farrell informed Hart that a PBT result of .051 would indicate more than one beer had been ingested an hour and a half before the accident.

At this time, O'Farrell was called away to another accident or crime scene. The Sheriff's Department concluded the accident investigation but for some unknown reason, Hart was not taken into custody. Instead, he was cited for a civil infraction for making an improper turn.

Simons' leg was later amputated making it impossible for him to return to his work as a laborer at Lansing Poured Walls.

On August 12, 2005, the Plaintiffs filed suit in state circuit court alleging Assault and Battery, Negligent Infliction of Emotional Distress, Negligence, Automobile Negligence, Negligent Entrustment and Loss of Parental Consortium.

Hart filed bankruptcy on October 14, 2005. A Complaint to Determine Dischargeability was filed on November 30, 2005. The parties have stipulated that the damage portion of the state court case is stayed pending this court's determination of dischargeability. Plaintiffs filed their Motion for Summary Judgment on April 26, 2006 and the Defendant responded on May 11, 2006.

## LEGAL ANALYSIS

[1, 2]  11 U.S.C. § 523(a)(9) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(9) for death or personal injury caused by the debtor's operation of a motor vehicle, if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance;

The purpose of Congress in enacting this statute, was to prevent drunk drivers from escaping financial obligations to their victims by filing bankruptcy.  Several courts have determined that § 523(a)(9) should be broadly construed to accomplish that intent. *Willison v. Race (In re Race),* 192 B.R. 949 (W.D.Mo.1995); *Konieczka v. Hodak (In re Hodak),* 119 B.R. 516 (Bankr. W.D.Pa.1990); *Waskiewicz v. Tuzzolino (In re Tuzzolino),* 70 B.R. 373 (Bankr. N.D.N.Y.1987); *Dougherty v. Brackett (In re Dougherty),* 51 B.R. 987 (Bankr.D.Colo. 1985).

The Defendant argues that he was never arrested and charged with the unlawful operation of a vehicle while intoxicated, and his alcohol level was far below the amount necessary in Michigan to be considered intoxicated.

MCLA § 257.625 sets forth the definition of alcohol-related traffic offenses.  It states in pertinent part:

(1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated.  As used in this section, "operating while intoxicated" means either of the following applies:

(a) The person is under the influence of alcoholic liquor, a controlled substance, or a combination of alcoholic liquor and a controlled substance.

(b) The person has an alcohol content of 0.08 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.

Although the Defendant's blood alcohol content does not rise to the level required by subparagraph (b), we conclude that Hart's alcohol level and behavior clearly fall within subparagraph (a).

■  According to MCLA § 257.625(1)(a), a motorist commits the offense of operating a motor vehicle while intoxicated when his ability is so weakened or reduced by consumption of intoxicating liquor that he drives with less ability than would an ordinary, careful, and prudent driver.  Such weakening or reduction of ability to drive must only be visible to an ordinary, observant person.  *People v. Lambert,* 395 Mich. 296, 235 N.W.2d 338 (1975); *Oxendine v. Secretary of State,* 237 Mich.App. 346, 602 N.W.2d 847 (1999).

■  Before and during the accident investigation, Deputy O'Farrell observed that Hart was impaired by alcohol.  Once he was able to administer the PBT, his observation was confirmed.  There is no requirement in the bankruptcy statute that the Defendant must actually be charged and convicted with an alcohol related crime, just that his motor vehicle operation was unlawful.

"Unlawful" as defined in Black's Law Dictionary, 5th ed. means:

That which is contrary to, prohibited, or unauthorized by law.

That which is not lawful.  The acting contrary to, or in defiance of the law; disobeying or disregarding the law. While necessarily not implying the ele-

ment of criminality, it is broad enough to include it.

Hart clearly disregarded and disobeyed the law by being visibly impaired and operating a motor vehicle. Just because he was not criminally charged does not make his behavior any less "unlawful."

It is also not required that the language in the state statute precisely mirror the language in the bankruptcy statute in order to effectuate its meaning. "In enacting a statute to apply to the drunk driving laws of fifty different states, Congress could not have incorporated the legal terminology used by each state in defining the various offenses." *Dougherty,* 51 B.R. at 989. Therefore, Congress chose the terms "unlawful" operation of a motor vehicle while "intoxicated" and then referred to each state's laws for a definition of those terms.

There is also no indication that Congress intended to draw a distinction between degrees of intoxication as the Defendant would have us believe. The purpose of § 523(a)(9) is to protect victims of accidents caused by drunk drivers. To effectuate that purpose, this court concludes that all degrees of intoxication defined by MCLA § 257.625 address the unlawful operation of a motor vehicle due to intoxication within the meaning of § 523(a)(9).

## ORDER

For the reasons stated in the attached Opinion:

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Plaintiffs' Motion for Summary Judgment is GRANTED;

2. Any and all damages determined by the state court shall be and are NON–DISCHARGEABLE;

IT IS FURTHER ORDERED that a copy of this Opinion and Order shall be served pursuant to Administrative Order 2004–06 (Mandatory Electronic Filing) upon Carl Daniel Simons, Jessy James Simons, Justin Kyle Simons, Matthew T. Smith, Esq., Gregory and Donna Marie Hart, and Peter C. Mason, Esq.